John BECKA, Plaintiff,

v.

APCOA/STANDARD PARKING,
Defendant.

No. SA CV 00–190 AHS (ANx).

United States District Court,
C.D. California,
Southern Division.

May 29, 2001.

William M. Crosby, Barnes Crosby Fitzgerald & Zeman, Irvine, CA, Salvatore E. Scarantino, Salvatore E. Scarantino Law Offices, Los Angeles, CA, for plaintiff.

Raymond Albert Chenault, Stephen S. Mayne, Steefel Levitt & Weiss, San Francisco, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STOTLER, District Judge.

### *PROCEDURAL HISTORY*

On February 8, 2001, defendant filed a motion for summary judgment. Plaintiff

filed his opposition on March 8, 2001. Defendant filed a reply on March 19, 2001. The parties appeared for oral argument on the matter on May 14, 2001. The Court, upon hearing oral argument, submitted the matter for further consideration. Having reviewed the parties' submissions and considered counsel's arguments presented at the hearing, the Court grants defendant's motion for summary judgment.

On April 20, 1999, plaintiff filed with the California Department of Fair Employment and Housing a complaint for age discrimination. Plaintiff alleged in the complaint that he was demoted, harassed, and induced to retire on account of his age. Plaintiff describes the discriminatory treatment as demotion and systematic harassment, including ageist remarks. Plaintiff filed a complaint on January 27, 2000, stating causes of action for (1) Age Discrimination under Cal. Gov't Code § 12941; (2) Breach of Oral Contract; and (3) Breach of Implied Covenant of Good Faith and Fair Dealing. Defendant removed the action on March 7, 2000.

### DISCUSSION

### I. Age Discrimination

■■■ The Court applies a burden shifting analysis to determine whether plaintiff has established a claim for age discrimination. The standard applied to federal cases under the ADEA is the same as that applied to cases under California law. *See Mixon v. Fair Employment & Housing Comm'n*, 192 Cal.App.3d 1306, 1316–17, 237 Cal.Rptr. 884 (1987). First, the employee must establish a prima facie case of age discrimination by showing that (1) at the time of the adverse employment action, the employee was 40 years of age or older; (2) some adverse employment action was taken against the employee; (3) at the time of the adverse action, the employee was satisfactorily performing his or her job; and, (4) the employee was replaced in his or her position by a significantly younger person with equal or inferior qualifications.[1] *Muzquiz v. City of Emeryville*, 79 Cal.App.4th 1106, 1116, 94 Cal.Rptr.2d 579 (2000); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990). However, if the employee is discharged as a result of general reduction in work force due to business conditions, the fourth element requiring replacement by a significantly younger person is not necessarily applicable. *See Rose*, 902 F.2d at 1421. Rather, in the instance of a reduction in force, "plaintiff must show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.; Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993).

If the employee establishes a prima facie case of age discrimination, the burden shifts to the employer who must then offer a legitimate, nondiscriminatory reason for the adverse employment action. *See Muzquiz*, 79 Cal.App.4th at 1116, 94 Cal. Rptr.2d 579. If the employer does offer a "presumptively valid, nondiscriminatory reason for its action, the burden then shifts back to the employee to demonstrate by competent evidence that the employer's stated reason for the adverse employment

---

1. If plaintiff is replaced by someone over 40 years old, he may still bring an age discrimination claim. The fact that the replacement employee is within the protected class does not vitiate application of the fourth element. Rather, "ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

decision was in fact a pretext or coverup for age discrimination." *Id.* at 1116–17, 94 Cal.Rptr.2d 579. However, "a prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994) (quoting *Sischo–Nownejad,* 934 F.2d at 1111) (reasoning that if plaintiff presents a particularly compelling prima facie case in that the "evidence, direct or circumstantial, consists of more that the prima facie presumption, a factual question will almost always exist with respect to any claim of nondiscriminatory reason").

## A. *Prima Facie Case*

### 1. Plaintiff is a member of the Protected Class

Plaintiff was over the age of forty at the time (1) his position in Los Angeles was eliminated, (2) he underwent several transfers, (3) he was passed over for assignment of additional employment responsibilities, and (4) he was demoted and has salary reduced while in the position at the Palm Springs operation.

### 2. Adverse Employment Action

Plaintiff experienced an adverse employment action when he was demoted from an executive to a managerial position concomitant with a reduced salary. The elimination of the Los Angeles position is not an actionable employment action. Plaintiff concedes in his opposition that the elimination of his position in Los Angeles was not the product of discriminatory animus. Plaintiff explains, that "Becka does not contend that the elimination of his Los Angeles position was discriminatory, illegal, or even unfair. Rather, Becka con-

tends that his transfers and reduction in pay were among the adverse acts in a series of discriminatory actions which together constitute direct and circumstantial evidence of a pattern of discrimination." Pla's Opp'n at 18:26–27 – 19:1–5.

Plaintiff, in his opposition, does not refer to APCOA's declining to extend to plaintiff expanded job responsibilities and AP-COA's subsequent assignment of those responsibilities to a younger employee, Chris Conley, as an adverse employment action. *See* Pla's Opp'n at 13:18–20. Further, plaintiff does not describe the instance as the basis for his claim. Rather, plaintiff refers to the assignment of the responsibilities to Mr. Conley as circumstantial evidence of age discrimination preceding plaintiff's demotion. *See* Pla's Opp'n at 13:10–23. Plaintiff, however, does not provide the time frame as to when plaintiff was "passed over" for the added job responsibilities. Plaintiff's reference to the Kelly deposition does not clarify the timing of when APCOA assigned the responsibilities to Conley instead of plaintiff. *See* Hughes Decl.Ex. 29 at 56–58. Nonetheless, the Court takes into account this incident that appears to have occurred in late 1998 in evaluating whether plaintiff has established a prima facie case.

■ The various job transfers, which occurred in 1997, are not actionable because they are barred by the statute of limitations. *See* Cal. Gov't Code § 12960 (plaintiff must file a complaint with the Department of Fair Employment and Housing within one year of the alleged unlawful practice). As the transfers are not related to the demotion in 1999, they are not aptly characterized as part of a continuing violation that would otherwise be actionable. "A continuing violation may ... be established not only by demonstrating a company-wide policy or practice, but also by demonstrating a series of related

acts against a single individual.... [The latter question] boils down to whether sufficient evidence supports a determination that the alleged discriminatory acts are *related closely enough* to constitute a continuing violation." *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1480–81 (9th Cir.1989) (emphasis added). In this case, the transfers are related to plaintiff's position being eliminated in 1997. *See, e.g.*, Hughes Decl.Ex. 10.

### 3. Satisfactory Performance of Duties

■ The parties dispute whether plaintiff was satisfactorily performing his duties while at APCOA. Defendant argues that during plaintiff's tenure at the Los Angeles facility, profits declined and plaintiff did not perform satisfactorily. *See, e.g.*, Mayne Decl.Ex. G at 83:21–25 – 84:1–2. Plaintiff, on the other hand, contends that during his employment as head of the Los Angeles facilities, the site was profitable and plaintiff received numerous commendations and bonuses as a result of his hard work. Hughes Decl.Ex. 1–5; Becka Decl. ¶ 8. Further, as relevant here, plaintiff details the improvements he sought for APCOA's contract with Palm Springs that resulted in a half-million dollars of additional profits to APCOA. Becka Decl. ¶ 20. Plaintiff adds that he assisted in major airport bids while in Palm Springs. Becka Decl. ¶ 20. For the purposes of establishing a prima facie case, plaintiff's showing is sufficient to meet this element. *Wallis*, 26 F.3d at 888 (in establishing a prima facie case, the requisite amount of proof is minimal, less than a preponderance of evidence).

### 4(A). Circumstantial evidence of age discrimination

Plaintiff's demotion is not properly characterized as a replacement, as contemplated by the fourth factor of a prima facie case. However, plaintiff contends that he has satisfied a prima facie case on the basis of direct and circumstantial evidence of age discrimination. Plaintiff contends that such circumstantial, statistic, or direct evidence is evident from certain ageist remarks, an alleged program of replacing older managers, and various examples of APCOA's withholding payments and reimbursement expenses. After reviewing the evidence, the Court concludes that Plaintiff has not shown "through circumstantial, statistical or direct evidence" that the discharge occurred under circumstances giving rise to an inference of age discrimination. *See Rose*, 902 F.2d at 1421.

#### a. *No Direct Evidence*

Plaintiff has not provided direct evidence of discrimination that would dispense with the requirement of establishing a prima facie case. *Cf. Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (direct evidence of discrimination where TWA airlines had a policy that any employee in flight engineer status at age 60 is entitled to continue working *if* he/she obtains flight engineer status through bidding process in CBA).

#### b. *Circumstantial/Statistical Evidence*

■ To make a showing of circumstantial or statistical evidence of discrimination, plaintiff must illustrate a "stark pattern of discrimination unexplainable on grounds other than age." *Rose*, 902 F.2d at 1423. Plaintiff's allegations of isolated instances of withholding payments or reimbursement expenses does not approach a "stark pattern."

##### i. Ageist Comments

■ The ageist comments allegedly conveyed by John Holton, Herb Anderson and

Jim Wilhelm likewise do not suffice as circumstantial evidence for establishing a prima facie case.

Assuming that APCOA management did make ageist comments at the 1994 seminar and that Anderson did make an ageist comment in 1997, plaintiff must nevertheless show some sort of connection between the statements and the adverse employment action that was allegedly the product of discrimination. For example, in *Nesbit v. Pepsico, Inc.*, the court found the remark that [management didn't] "necessarily like grey hair" to have been conveyed in an ambivalent manner and was not tied directly to plaintiff's termination. 994 F.2d 703, 705 (9th Cir.1993).

The courts have also considered the effect of ageist statements as part of plaintiff's showing that the nondiscriminatory reasons for terminating plaintiff were pretextual. To show a pretext, the employee must produce "specific substantial evidence of pretext." *Horn v. Cushman & Wakefield*, 72 Cal.App.4th 798, 807, 85 Cal. Rptr.2d 459 (1999). Insofar as plaintiff points to ageist remarks as "specific substantial evidence," the rule is that " 'stray' remarks are insufficient to establish discrimination." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990) (quoting *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989)) (noting that stray "remarks, . . . when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision maker in issue"). Accordingly, in *Nidds v. Schindler Elevator Corp.*, the court held that the comment by the service mechanic that he intended to "get rid of all the 'old timers' " because they would not "kiss [his] as* " did not evidence a discriminatory motive behind plaintiff's termination. 113 F.3d 912, 919 (9th Cir.1997). The court explained that the comment was, rather,

ambiguous as it was not readily apparent if the comment referred to longtime employees or employees who failed to follow directions instead of merely employees over the age of 40. The court also noted that the comment was not tied to plaintiff's layoff. The court compared the comment with that in *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir.1996). In *Schnidrig*, the employee asked the employer on three separate occasions if he would be considered for president. Upon each of those requests, his employer responded that he planned to hire someone younger for the job. *See id.* at 1411. The employee further submitted evidence of that statement in the form of meeting notes and the affidavit of a co-worker. *See id.*

Plaintiff in this case does not provide sufficient evidence to support an inference of discrimination necessary to meet the fourth element of a prima facie case in place of the "replacement" prong. To the extent plaintiff does establish a prima facie case, this lack of showing of specific substantial evidence is likewise pertinent to a finding that plaintiff is unable to show that the employment actions taken by defendant were pretextual.

The comments made at the 1994 Asheville meeting occurred three years before plaintiff's position was eliminated and five years before plaintiff experienced the pay cut that he attributes to discrimination. The time alone between the two events renders dubious any connection between those "stray" remarks and the adverse employment action that plaintiff experienced. *See, e.g., Horn*, 72 Cal.App.4th at 819, 85 Cal.Rptr.2d 459 (describing isolated remark as ambiguous as far as discriminatory animus and not relating to plaintiff's termination).

■ Plaintiff fails to show that Anderson's 1997 comment is tied to an actionable adverse employment action.

Likewise, Becka is unable to show a relationship between Wilhelm's alleged comment made in 1998 and Becka's demotion/salary reduction. Moreover, plaintiff is unable to provide any evidence to corroborate Wilhelm's comment. Becka Decl. ¶ 21. *Cf. Schnidrig*, 80 F.3d 1406 (meeting notes and affidavit from co-worker found corroborative of statements made).

### ii. Retirement Packages

■ Plaintiff also points to Mike Machi's, APCOA's human resources head, reported effort to offer retirement packages to several of the older employees as APCOA. Plaintiff refers to the termination of these older employees as "transition plans" in the form of retirement packages offered to Keith Hord, Bob Hill, Jerry Jacobs and Jack Kelly. Machi Dep.Ex. 27, 134:19–135:6; Ex. 11. However, at least in the setting of the ADEA, offering of retirement packages is not an indication of age-based discriminatory animus. 29 U.S.C. § 623(f)(2)(B) ("It shall not be unlawful for an employer, employment agency, or labor organization to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section—(B) to observe the terms of a bona fide employee benefit plan—(ii) that is a voluntary early retirement incentive plan consistent with the relative purpose or purposes· of this chapter."). Plaintiff has not made a sufficient showing of discrimination· by his insinuation that early retirement packages were part of a orchestrated plan of age discrimination.

### 4(B). "Replacement" by a Younger Worker

■ As an alternative to relying on circumstantial or direct evidence to present a prima facie case, plaintiff does refer to his being passed over for assignment of additional job responsibilities. At oral argument, plaintiff referred to this incident when recounting adverse actions that occurred within the statutory period. In his opposition, plaintiff suggests, as an example of a circumstantial inference of discrimination, that he was passed over for additional job responsibilities, and that defendant ultimately assigned those responsibilities to a younger employee, Chris Conley. To state a prima facie case under a replacement theory, plaintiff must establish that the younger employee who was promoted in place and instead of plaintiff was an employee of "equal or inferior qualifications." *See Rose*, 902 F.2d at 1421. Plaintiff does not discuss Conley's qualifications.

Were the Court to construe the assignment to Mr. Conley, instead of plaintiff, however, as sufficient. to establish the fourth element of the prima facie case, defendant nonetheless provides a nondiscriminatory reason for the assignment. Plaintiff, in turn, does not establish that such reasons are pretextual. Defendant explains that Mr. Kelly, when seeking to assign those responsibilities to an APCOA/Standard employee, first communicated with Mr. Wilhelm about the possibility of assigning those responsibilities to Becka. *See* Hughes Decl.Ex. 29, 56:15–25. However, per Wilhelm's instructions, Kelly did not assign those responsibilities to Becka on account of Wilhelm's reported sentiment that Becka had not performed well in Los Angeles. *See id.* at Ex. 29, 57:5–12. After the decision not to assign the responsibilities to Becka, Kelly, at Wilhelm's instructions proceeded to "take a look at Conley." *See id.* at Ex. 29, 58:12–16. Mr. Conley was an APCOA employee before the joint venture with ESI. *See id.* at Ex. 29, 17:20–22. Further, Mr. Wilhelm had worked with Mr. Conley in the past, and recommended to Mr. Kelly that Mr. Conley assume the operational duties that Mr. Kelly needed fulfilled in his division. *See id.* at Ex. 29, 17:20–24; *Merrick*, 892 F.2d at 1438 (finding "appropriate" employer's reason for promoting younger em-

ployee instead of plaintiff—employer's supervisor recommended the employee). In *Merrick,* the plaintiff at least undertook to attack the qualifications of the employee who was awarded the promotion. *See id.* Plaintiff here does not call Mr. Conley's qualifications into doubt.

The Court concludes that plaintiff has failed to establish the fourth element of a prima facie case, which requires circumstantial evidence of discrimination as it relates to Becka's demotion. Further, to the extent plaintiff relies on defendant's assigning extended job responsibilities to Mr. Conley instead of Becka, the Court necessarily concludes that plaintiff has made no showing that Mr. Conley was either equally qualified or less qualified than plaintiff. To the extent the assignment to Mr. Conley may qualify to establish the fourth factor of replacement by a younger person in a prima facie case, the Court concludes that plaintiff has not made any showing of pretext in response to defendant's explanation that Mr. Kelly assigned those responsibilities to Mr. Conley on the recommendation of Mr. Wilhelm who (1) had worked with Mr. Conley in the past and (2) was unsatisfied with Becka's performance in Los Angeles.

Having failed to meet his burden in establishing a claim for age discrimination and present a triable issue of material fact, the plaintiff's case cannot withstand defendant's motion.

## II. BREACH OF CONTRACT

Plaintiff's claim for breach of contract is barred by the parol evidence rule. Plaintiff alleges that in October 1996, in the wake of the merger with EPI, Walter Stuelpe promised plaintiff that "we'll always take care of you" and "you'll always have a job and you won't lose any compensation or benefits." Compl. ¶ 9. Plaintiff alleges that defendant breached that promise on March 15, 1999 by reducing plaintiff's compensation (including bonus and benefits) over $100,000 per year. Compl. ¶ 25.

"Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ.Proc. § 1856.

■ To determine whether evidence of an alleged oral agreement is admissible in light of the parol evidence doctrine, the Court may consider (1) whether the written agreement appears to be a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; (4) whether the jury might be misled by the introduction of the parol testimony. *Malmstrom v. Kaiser Aluminum & Chemical Corp.,* 187 Cal.App.3d 299, 314, 231 Cal.Rptr. 820 (1986).

■ First, the contracts at issue contain integration clauses, confirming that the written contracts supercede all prior or contemporaneous oral agreements. The clause in both the March and May 1997 contracts states: "This Agreement embodies the whole agreement between the parties hereto concerning the subject matter hereof. This Agreement may not be changed except by a writing signed by the party against whom enforcement thereof is sought." Hughes Decl.Ex. 35, 36.

Second, an agreement as to perpetual maintenance of compensation and benefits would not naturally be in a separate agreement. "An oral agreement is credible if it might naturally have been made as a separate agreement by parties similarly situated.... [A]n oral agreement is also creditable unless it can be said with certainty that the parties would have included the oral agreement in the writing." *Banco do Brasil v. Latian,* 234 Cal.App.3d 973, 1002,

285 Cal.Rptr. 870 (1991) (internal quotations omitted). As the agreements discuss plaintiff's compensation and benefits, it logically follows that the company's agreement to never change such benefits would be included in the agreement itself.

Plaintiff did add a handwritten note in both March 1997 and May 1997 agreements that by signing the agreement "I am not releasing any rights or claims which I may have as of this time including but not limited to any rights or claims which I may have under my prior [employment][2] agreements" thus suggesting that the contracts are not integrated.

However, the Court may find at least partial integration as to the sections addressing compensation and benefits, as that section comprehensively addresses plaintiff's compensation amount and bonus calculation. *See Wagner v. Glendale Adventist Medical Center,* 216 Cal.App.3d 1379, 1385, 265 Cal.Rptr. 412 (1989) ("An integration may be partial as well as complete; that is, the parties may intend that a writing finally and completely express certain terms of their agreement rather than the agreement in its entirety. The parol evidence doctrine applies equally to partial integration."). The comprehensive nature of the compensation and benefits section supports the conclusion that it was a final and complete expression of one term of the parties' agreement and further supporting the conclusion that at least the compensation and benefits provision was an integrated one.

Third, there is an inconsistency between plaintiff's claim of perpetual maintenance of the level of compensation and benefits and the termination date reflected on the agreements. The term of the agreement is for only one year, after which either party has the right to terminate the agreement by giving 60–days notice. Thus, the agreement gave the employer the right to terminate the stated rate of compensation and benefits after one year (thus allowing for termination in 1998). This mechanism for termination, permitting termination of plaintiff's level of compensation, would be inconsistent with an agreement for perpetual maintenance of compensation level.

In conclusion, any alleged oral contract is superceded by the express written terms of the written agreement, consummated in March and May 1997, memorializing plaintiff's employment agreement with APCOA. *See Malmstrom,* 187 Cal. App.3d at 314, 231 Cal.Rptr. 820.

## III. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *See Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 349–50, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). As plaintiff's claim is based on the alleged oral contract that the Court has found barred by the parol evidence rule, and a provision for perpetual maintenance of plaintiff's level of compensation and benefits is not contained in the written employment contract, plaintiff's bad faith claim cannot stand.

## *CONCLUSION*

Accordingly and for the foregoing reasons, the Court concludes that defendant has demonstrated, through admissible evidence, that there remain no genuine issue of a material fact as to each element of plaintiff's claims. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court has this date modified, signed, and filed defendant's proposed Statement of Uncontroverted Facts and

---

**2.** The word "employment" is included in the notation to *the March 1997* agreement only.

Conclusions of Law, lodged on February 8, 2001. The Clerk is directed to enter Judgment in accordance with the foregoing.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.