Filed 9/12/14  Stoffregen v. Luu CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT T. STOFFREGEN, | |
| Plaintiff and Appellant, | E057009 |
| v. | (Super.Ct.No. CIVDS1107113) |
| QUOC LUU et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Robert T. Stoffregen, Plaintiff and Appellant in pro. per.

Schilt & Heinrich and E. Nathan Schilt for Defendants and Respondents.

After plaintiff Robert T. Stoffregen was diagnosed with prostate cancer, he received proton therapy from defendants Loma Linda University Medical Center (Loma Linda) and Quoc Luu, M.D. (Dr. Luu) (collectively defendants).  The cancer, it seems, was cured; however, the radiation damaged Stoffregen's bladder and eventually required that it be surgically removed and replaced.

1

In his deposition, Stoffregen admitted that he knew by September 2009 that defendants had damaged his bladder by applying too much radiation. However, he did not file this action until June 2011. The trial court ruled that the action was barred by the one-year statute of limitations for medical malpractice (Code Civ. Proc., § 340.5) and entered summary judgment.

Stoffregen appeals. He argues that he did not actually make the asserted admission; however, he did, several times over. He also argues that the deposition questions were tricky, confusing, and leading. If so, however, his remedy was to object during the deposition or, at a minimum, to correct the transcript afterward; he did neither. Finally, he argues that, even assuming he knew by September 2009 that he had been injured as a result of defendants' negligence, he did not yet know that the injury would necessitate a bladder replacement. We will hold, however, that the statute of limitations started running even in the absence of such knowledge. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the evidence offered in support of and in opposition to the motion for summary judgment. That evidence consisted of Stoffregen's deposition, Stoffregen's declaration, and Dr. Luu's declaration, plus certain documentary evidence.

Defendants filed evidentiary objections to Stoffregen's declaration. The trial court, however, never ruled on those objections. Accordingly, we must presume that the objections were overruled and the evidence was admitted. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) Defendants have not renewed their objections on appeal.

Consistent with the applicable standard of review (see part III, *post*), we view the evidence in the light most favorable to Stoffregen and resolve all doubts and ambiguities in his favor.

In 2006, Stoffregen was diagnosed with prostate cancer. At that point, he was already experiencing some mild urinary frequency.

Stoffregen received proton therapy at Loma Linda, under the supervision of Dr. Luu. He signed a consent form acknowledging that the possible side effects of proton therapy included "[u]rinary problems such as: . . . increase[d] frequency and decrease[d] flow of urination, . . . which may require surgical repair." The proton therapy ended in June 2007.[1]

Between June 2007 and June 2009, Stoffregen's urinary frequency got worse. As a result, in June 2009, he consulted Dr. Matthew Greenberger, a urologist.

Sometime between June and September 2009, Dr. Greenberger told Stoffregen, "You have radiation cystitis." Stoffregen understood that the cause of this condition was

---

[1]    At one point, Stoffregen testified that he had complications during the treatment. Later, however, he testified that he did *not* have complications during the treatment. We resolve this contradiction in his favor and assume that he did not have any complications at that time.

3

"over-radiat[ion]" — "[t]oo much radiation." Specifically, he knew that his urinary frequency was due to radiation changes to his bladder, and that these radiation changes, in turn, were due to Loma Linda having given him too much radiation during proton therapy. As he put it: "I didn't get [radiation cystitis] in a suntan. It came from someplace."

However, Dr. Greenberger also told Stoffregen, "We can correct this with medication . . . [a]nd your body will heal itself." He added, "[I]t should clear[ ]up in a few months."[2] Thus, at this point, Stoffregen understood that the problem could be corrected with medication.

As it turned out, the medication did not help. Stoffregen's symptoms got worse, to the point where he was "trying to urinate every 15 to 20 minutes, up all night long." There was blood in his urine. His symptoms became "intolerable."[3] His life was "slowly . . . deteriorat[ing] . . . ."

Stoffregen therefore "gave up on [Dr.] Greenberger and his medication." In March 2010, he saw Dr. Stuart Boyd, another urologist. Dr. Boyd told him that his

---

[2]     Somewhat to the contrary, there was evidence that Dr. Greenberger "attempt[ed]" to treat the problem with medication, but he warned Stoffregen that it could get worse and that Stoffregen might experience difficulty urinating or urinary retention. Again, we resolve this contradiction in Stoffregen's favor; thus, we assume that Dr. Greenberger told him that medication would fix the problem.

[3]     At one point, Stoffregen testified that his urinary frequency symptoms were already "intolerable" before he went to Dr. Greenberger. However, he also testified that they were "tolerable" when he went to Dr. Greenberger and did not become "intolerable" until he went to Dr. Boyd. Yet again, we resolve this contradiction in his favor.

bladder was "gone" because it had been over-radiated.  The side effects of the radiation were "extreme."  Dr. Boyd commented, "It looks like raw hamburger in there."

Dr. Boyd recommended a "neobladder," i.e., a bladder replacement formed out of tissue from the small intestine.  In September 2010, Stoffregen underwent surgery and received a neobladder.

## II

## PROCEDURAL BACKGROUND

On June 6, 2011, Stoffregen filed this action against Loma Linda and Dr. Luu.[4] He alleged causes of action for medical malpractice, fraud, battery, and intentional and negligent infliction of emotional distress.

Loma Linda and Dr. Luu filed a motion for summary judgment on all causes of action.  With respect to the cause of action for medical malpractice, they argued that the statute of limitations had run.  Stoffregen filed an opposition.  After hearing argument, the trial court granted the motion.  It therefore entered judgment against Stoffregen and in favor of Loma Linda and Dr. Luu.

---

[4] Optivus Proton Therapy, Inc. was also named as a defendant.  It filed a separate motion for summary judgment, which was denied.  Thus, it is not a party to this appeal.

III

STOFFREGEN'S ADMISSIONS IN HIS DEPOSITION

ESTABLISHED THAT THE STATUTE OF LIMITATIONS HAD RUN

Stoffregen contends that the trial court erred by granting the motion for summary judgment on his medical malpractice cause of action based on the statute of limitations. He does not challenge the granting of the motion on his other causes of actions; we deem any such challenge forfeited.

"'This case comes to us on review of a summary judgment. Defendants are entitled to summary judgment only if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on defendants' motion. [Citations.] In so doing, we view the evidence in the light most favorable to plaintiff[] as the losing part[y], resolving evidentiary doubts and ambiguities in [his] favor.' [Citation.]" (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 605-606.)

The limitations period for "an action for injury or death against a health care provider based upon such person's alleged professional negligence" is "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) In this case, defendants disclaim any reliance on the limitations

6

period of three years from injury; they rely exclusively on the alternative period of one year from discovery.

"The one-year limitation period of section 340.5 is a codification of the discovery rule . . . . [Citations.]" (*Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 290.) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] . . . [B]y discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, [we are] referring to the 'generic' elements of wrongdoing, causation, and harm. [Citation.] In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.)

Based on Stoffregen's admissions in his deposition, he learned from Dr. Greenberger, by not later than September 2009, that defendants had injured his bladder by applying too much radiation. This was sufficient to start the one-year limitations period running. Stoffregen did not file suit until more than a year later. Accordingly, his suit is barred.

7

Throughout his briefs, Stoffregen insists that Dr. Greenberger did not tell him that he had been over-radiated; he claims he did not learn this until he saw Dr. Boyd.[5] However, his own deposition testimony is to the contrary. "In determining whether any triable issue of material fact exists, the trial court may, in its discretion, give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party. [Citations.]" (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451.) "[A]dmissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts. Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of fact (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits. [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22.)

---

[5] We were initially perplexed as to why the parties were fighting over this. Stoffregen saw Dr. Boyd in March 2010, but he still did not file suit until June 2011, over a year later. Thus, it appeared that his action was barred in any event.

At oral argument, however, counsel for defendants conceded that Stoffregen served a timely notice of intent to sue under Code of Civil Procedure section 364, which tolled the statute of limitations for 90 days. (Code Civ. Proc., § 364, subd. (d).)

Admittedly, at one point, Stoffregen did testify that Dr. Boyd told him he had been over-radiated, and Dr. Greenberg did not. However, he immediately corrected himself, saying "[P]ardon me. We [i.e., he and Dr. Greenberg] did discuss it . . . . That discussion did take place. . . . [I]t was discussed that I was over-radiated, I had radiation cystitis and . . . it's increasing and causing the urinary frequenc[y] . . . ." His mistaken and immediately retracted testimony, when viewed in context, is not substantial evidence.

Stoffregen argues that he made a number of contradictory statements in his deposition. However, as stated in footnotes 1-3, *ante*, we have resolved all contradictions in his favor.

Stoffregen also argues that his deposition testimony should have been inadmissible because some of the questions were leading and some of his answers were nonresponsive. However, he did not object to any of this evidence below; hence, he forfeited any such objections. (Code Civ. Proc., § 437c, subds. (b)(5), (d); Cal. Rules of Court, rule 3.1354.) Separately and alternatively, he had already forfeited any objections to the form of the question (or of his answer) by failing to raise them at the deposition itself. (Code Civ. Proc., § 2025.460, subd. (b).) Finally, we also note that defendants' counsel was entitled to ask leading questions because the deposition was, in substance, his cross-examination of an opposing party. (Evid. Code, § 767, subd. (a)(2).)

Stoffregen "is not exempt from the foregoing rules because he is representing himself on appeal in propria persona. Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is

9

entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure. [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

Significantly, Stoffregen gave similar answers in response to wholly non-leading questions. For example, he testified:

"Q When did you have your first indication that you understood that the proton therapy treatment may have caused damage to your body?

"A That's when I saw Dr. Greenberger and he said that — he told me that I had radiation cystitis."

He also gave similar answers even when that required him to disagree with leading questions. For example, he testified:

"Q . . . [W]hen did you first believe that you had received any type of damage from the proton therapy treatment? Was that when you went to UCLA in '08?

"A No. June of 2009."

Stoffregen complains that he was confused during his deposition and that counsel for defendants was trying to trick him. The questions, however, were not tricky or confusing. If they were, Stoffregen's remedy was to review the transcript and, if necessary, to correct it. (Code Civ. Proc., § 2025.520, subds. (b), (c); see also *Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1381 [a deposition may be corrected, and an admission avoided, when "the question was misleading or

10

ambiguous"].)  He could even have brought a motion to suppress the deposition in its entirety.  (Code Civ. Proc., § 2025.520, subd. (g).)  He did not take any of these steps.[6]

Stoffregen also argues that he reasonably relied on Dr. Greenberger's advice that medication would cure the problem.  Even if so, he knew that he had been injured, he knew that his injury had a negligent cause, and he knew that he had sustained damages, even if only to the extent of needing to consult Dr. Greenberger and take medication; he simply did not realize the full extent of his damages.  "'[T]he extent of damage is not an element of a cause of action in tort, and the general rule is that the cause of action is complete on the sustaining of "actual and appreciable harm," on which the recoverable damages would be more than nominal.'  [Citation.]"  (*Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1623.)  "[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period.  [Citation.]"  (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 752.)

Finally, Stoffregen notes that he had signed a consent form acknowledging the possibility of urinary problems requiring "surgical repair."  He argues that, based on what

---

[6]     According to Stoffregen, "The deposition was an atrocity of justice, full of code violations and badgering that's so blatant that the trial court obviously never reviewed the document in its entirety or the court is totally bias [*sic*]."

Actually, the deposition was orderly and unremarkable.  There was no "badgering" or "hammering."  But even if there was, once Stoffregen failed to object in any way, the trial court did not have the option of simply pretending the deposition did not exist.  Thus, Stoffregen's charge of bias is uncalled for.

Dr. Greenberg told him, he reasonably concluded that he needed surgical *repair* of the bladder, at most, which, due to the consent form, would not be actionable. It was only when he consulted Dr. Boyd that he realized that he actually needed surgical *replacement* of the bladder, and hence that he did, in fact, have a valid cause of action.

To put it another way, Stoffregen argues that a plaintiff cannot be expected or required to sue if he or she believes that the defendant would have a meritorious defense. He cites no authority for this proposition. Under Code of Civil Procedure section 340.5, the statute starts running when the plaintiff discovers the "injury," not the claim or cause of action.

However, we need not grapple with this issue head-on because the consent form did not actually afford a defense. It simply acknowledged that certain side effects were "possible." It did not include a waiver or release of negligence claims. Indeed, a release of future malpractice claims would not have been enforceable. (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 95-102; *Belshaw v. Feinstein* (1968) 258 Cal.App.2d 711, 725-727.) If Stoffregen sued on a theory of lack of informed consent, perhaps the form would afford a defense. But if he sued on a theory of negligence, as he ultimately did, it would not. If he believed that the consent form barred him from suing, he was simply mistaken.

We therefore conclude that the trial court properly granted summary judgment on the medical malpractice cause of action.

IV

DISPOSITION

The judgment is affirmed.  Defendants are awarded costs on appeal against

Stoffregen.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
                                                                                    J.

We concur:

RAMIREZ _____
                        P. J.

MILLER _____
                        J.