[No. B013129. Second Dist., Div. Three. Sept. 21, 1987.]

JOSEPH HOFFMAN, Plaintiff and Appellant, v.
CITADEL GENERAL ASSURANCE, LTD., et al., Defendants and
Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts 3, 4, and 5 of the Discussion.

COUNSEL

Seider, Cohan & Taron, William H. Taron and Tony C. Hoh for Plaintiff and Appellant.

Feinberg, Gottleib & Grossman, William A. Feinberg and Mark S. Gottlieb for Defendants and Respondents.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Joseph Hoffman (Hoffman) appeals a summary judgment in favor of defendants and respondents Citadel General Assurance, Ltd. (Citadel), Canadian Marine International Underwriters, Ltd. (Canadian), and Beech Street Insurance Services (Beech) (collectively respondents).

Because Hoffman as an insured cannot rely on Insurance Code section 673,[1] which protects insurers by requiring premium lenders to provide insurers with notice of cancellation, and for other reasons stated below, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1979, Hoffman obtained a policy of insurance for a yacht from Citadel for a premium of $1,000. Because Citadel was a nonadmitted insurer in California, Beech, a licensed surplus-lines broker, placed the insurance and issued the certificate of insurance to Hoffman. Canadian acted as the underwriting manager. The term of the policy was for one year beginning September 14, 1979.

At the time Hoffman obtained the insurance, he was in the process of purchasing the yacht which was docked in St. Petersburg, Florida. A policy endorsement specified the navigation limits were confined to Tampa Bay, Florida; California; and Baja California coastal waters, not to exceed 100 miles offshore. To bring the yacht to California, Hoffman purchased for $422 additional coverage to extend the navigation warranty to include one delivery trip from St. Petersburg to Galveston, Texas, from which location the vessel would be trucked to Newport Beach, California.

Hoffman financed the premium for the policy of insurance through Chartered Bank of London, predecessor to Union Bank (Bank).

---

[1] All subsequent statutory references are to the Insurance Code, unless otherwise indicated.

On October 20, 1979, Hoffman took delivery of the yacht. Two days later, the vessel ran aground off the Louisiana coast and sustained damage. Hoffman and his crew were rescued by Coast Guard helicopter and flown to New Orleans. Hoffman filed a claim which was investigated and denied on January 24, 1980.

The denial was based on the grounds: (1) Hoffman breached the navigation warranty by failing to sail on a direct line from St. Petersburg to Galveston across the Gulf of Mexico; and (2) the loss was caused by the unseaworthy condition of the vessel, faulty navigation equipment and lack of due diligence by Hoffman.

On February 21, 1980, the Bank sent Hoffman a notice of cancellation effective February 27, 1980, unless it received payment on the premium installment before that date. Hoffman mailed his payment before the cancellation date, but the check was returned by his bank unpaid. On March 3, 1980, the Bank mailed Beech a confirmation of the effective date of cancellation, which Beech received two days later. Hoffman was out of town at the time, and did not learn his check had been returned unpaid until March 7, 1980. Hoffman paid the amount owing, and on March 12, 1980, the Bank sent Beech a request to reinstate the policy.

Robert Gruwell (Gruwell), a Beech vice-president, notified Michael Orozco, Hoffman's agent, that Citadel was declining to reinstate the policy in view of, inter alia, the prior loss, prior notices of intent to cancel the policy, and nonpayment of the premium for the endorsement for the trip charge.

On April 3, 1980, Hoffman's attorney, Sitheris V. Chebithes (Chebithes) contacted Beech and Canadian regarding Hoffman's claim. On April 30, 1980, Gruwell responded by a letter wherein he directed Chebithes to Beech's attorney, William Feinberg (Feinberg). While denying liability, Gruwell also offered in the letter to settle the matter for $4,470 in damages arising out of the grounding, less the $850 deductible.

By letter to Chebithes dated July 10, 1980, Feinberg confirmed their telephone conversation of the previous day to the effect: Chebithes had advised Feinberg that Hoffman was "quite irate"; Hoffman felt he had been "shabbily treated" by the insurer, and "was in no mood to negotiate"; Chebithes was preparing a bad faith suit for filing in federal court; Chebithes had promised to send Feinberg documentation re Hoffman's claim, inasmuch as Feinberg had never seen any substantiation of Hoffman's claimed damages in the approximate amount of $39,000.

In the letter, Feinberg also reviewed his repeated attempts since May 12, 1980, to contact Chebithes. Feinberg wrote he found it difficult to

understand the basis of a bad faith action when the carrier had not yet received a substantiation of the claimed damage, and he also sought to arrange for an examination of the boat. Feinberg assured Chebithes once the promised materials were received, they would be forwarded to Feinberg's principals for prompt evaluation and response.

Toward the end of the letter, Feinberg wrote: "Quite obviously, I have no control over whether or not you file the action at this time; however, I trust you will see the wisdom of deferring that rather precipitous action based on the resume of the facts set forth in this letter."

On August 21, 1980, Feinberg again wrote Chebithes, renewing his requests for the promised documentation and for an examination of the boat.

On October 3, 1980, Hoffman phoned Feinberg to advise him of Hoffman's discharge of Chebithes. Hoffman further indicated he had consulted a new admiralty attorney who was "anxious to sue [the] insurer for substantial sums of money including punitive damages." However, Hoffman also expressed a willingness to negotiate a settlement without the assistance of counsel.

Feinberg replied to Hoffman by letter of October 10, 1980, and noted the subject policy provided: "No suit or action against the Company shall be maintainable in any court of law, admiralty or equity on any claim (a) for damage or loss to the subject matter hereby insured unless commenced within three months after the termination of [the] Policy; . . ." Accordingly, because the policy was cancelled effective February 27, 1980, an action under the policy was time barred.

Nonetheless, Feinberg renewed the offer of $4,470 for a full general release of all claims.

On September 2, 1981, Hoffman filed a first amended complaint, naming as defendants Citadel, Canadian and Beech, and pleading six causes of action. In the first count, Hoffman alleged Citadel had breached the contract of insurance by refusing to pay benefits due under the policy. In the second cause of action, Hoffman pled Beech has misrepresented its expertise in the field of marine insurance, Hoffman had relied on Beech to act as his agent and broker, and the coverage Hoffman sought was not obtained. The third count, directed at Citadel, alleged bad faith denial of coverage. In the fourth and fifth causes of action, respectively, Hoffman pled each of the defendants had intentionally and negligently inflicted him with emotional harm in an attempt to get him to withdraw his claim or settle for less than

its true value. The final cause of action alleged the defendants had conspired to defraud Hoffman.

On December 18, 1984, respondents filed a motion for summary judgment. Hoffman filed opposition papers. The matter was heard January 23, 1985. The trial court granted the motion, holding: the policy was terminated by the Bank on February 27, 1980; Beech was Citadel's agent, so that notice of cancellation from the Bank to Beech was notice to the insurer within the meaning of section 673; Hoffman had failed to comply with the policy provision that suit be commenced within three months after termination of the policy; Hoffman's damages were caused by his failure timely to seek to enforce his rights under the policy; and no evidence supported Hoffman's estoppel argument.

Judgment was entered February 25, 1985. Hoffman appealed.

## CONTENTIONS

Hoffman contends: (1) a premium lender may cancel a policy only in strict compliance with section 673, so that the cancellation in the instant case was ineffective; (2) the policy limitation that suit be commenced within three months of termination is unenforceable as against public policy; (3) even if the provision is valid, respondents are estopped to rely on it; and (4) causes of action for bad faith denial of coverage, infliction of emotional distress and conspiracy to defraud are not actions on the policy and therefore not governed by the contractual limitations period.

## DISCUSSION

1. *Standard of appellate review.*

Summary judgment is properly granted only if no material fact issue exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 446 [213 Cal.Rptr. 314].) The trial court must decide whether a triable issue of fact exists (*Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 8 [151 Cal.Rptr. 570]), and when the sole remaining question is one of law, it is the duty of the trial court to determine the issue of law. (*Coast-United Advertising, Inc.* v. *City of Long Beach* (1975) 51 Cal.App.3d 766, 769 [124 Cal.Rptr. 487].)

"The party opposing the summary judgment, which is supported by declarations or affidavits sufficient to sustain the motion, has the burden of showing that triable issues of fact do exist. [Citation.] If that burden is not

sustained, summary judgment is proper. [Citation.]" (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 459 [202 Cal.Rptr. 222].)

■ Because the determination of the trial court is one of law based upon the papers submitted, the appellate court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) However, a motion for summary judgment is addressed to the sound discretion of the trial court, so that absent a clear showing of abuse, the judgment will not be disturbed on appeal. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583 589 [177 Cal.Rptr. 268].)

These rules govern our review of this case.

2. *Hoffman cannot rely on the Bank's failure to provide notice of cancellation to Citadel.*

■ It is not Hoffman's contention he did not receive notice of cancellation, but only that *Citadel's* right to receive notice was infringed. Hoffman submits because the Bank never mailed a notice to Citadel of its exercise of the right to cancel or a confirmation of the effective date of cancellation, the cancellation was ineffective. According to Hoffman, the policy remained in effect until September 14, 1980, when it expired by its terms. Therefore, Hoffman argues, the filing of suit on October 16, 1980, was well within the policy provision limiting time to sue to the three months after termination.

Section 673 provides in pertinent part: "(b) No lender shall exercise the right to cancel a financed insurance policy because of the default of the insured under a premium payment loan agreement except in accordance with this section. [¶] (c) Written notice of the exercise of the right to cancel shall be mailed by the lender to the insurer and to the insured at the address shown on the premium payment loan agreement or his or her last known address, specifying a date five days or more after the date of mailing of such notice as the effective date of cancellation. Any insurer may, in writing delivered to the lender, waive, generally or specifically, the right to receive such notice or notices. . . . [¶] . . . . [¶] (e) A written exercise of [the] right containing a confirmation of the effective date of cancellation shall be mailed by the lender to the insurer within five days following that effective date of cancellation specified in the notice described in subdivision (c) unless the insured has cured any and all defaults."

As indicated, the trial court held Beech was Citadel's agent, so that notice by the Bank to Beech was notice to the insurer.

Preliminarily, we note there is a dearth of case law construing section 673. We are also mindful of section 673's requirement that cancellation by a premium lender be in accordance with the statute. However, it eludes this court how Hoffman can complain of the lack of notice to Citadel.

Section 673 requires notice to both the insured and the insurer, but the notices serve distinct functions. Notice to the insurer is for the insurer's, not the insured's benefit; for example, in the event of a postcancellation loss and claim, notice by the premium lender to the insurer will protect the insurer from paying on a claim which arose after the premium lender terminated the policy.

Section 673, subdivision (c), allows the insurer to waive the right to receive notice. Such right by the insurer is not consistent with a claim by Hoffman that the notice requirement inures to the benefit of the insured. The insurer's right to waive notice makes it apparent from the statute that an insured cannot complain of lack of notice by the premium lender to the insurer, and such notice is solely for the insurer's benefit. Had Citadel exercised its right to waive notice, Hoffman obviously would be precluded from raising the lack of notice to the insurer. Merely because Citadel did not waive the right does not enable Hoffman to object under the statute.

Because we hold Hoffman cannot raise a lack of notice to Citadel, it is unnecessary to determine whether Beech was Citadel's agent for purposes of receiving notice.

3.-5.*

. . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Hoffman to bear costs on appeal.

Danielson, J., and Margolis, J.,† concurred.

---

* See footnote, *ante,* page 1356.
† Assigned by the Chairperson of the Judicial Council.