[No. A041324. First Dist., Div. Four. Mar. 21, 1989.]

BARBARA TRERICE, Plaintiff and Appellant v.
BLUE CROSS OF CALIFORNIA et al., Defendants and
Respondents.

COUNSEL

Michael Weisberg and Susan Kenney for Plaintiff and Appellant.

Mary Maloney Roberts, Eric P. Angstadt and Corbett & Kane for Defendants and Respondents.

OPINION

ANDERSON, P. J.—Appellant Barbara Trerice appeals from a judgment in favor of respondents Blue Cross of California (Blue Cross) and Angele Khachadour, on her "complaint for damages" arising from her employment termination. She claims that the trial court erred in granting respondents' motion for summary judgment. We affirm.

### Factual and Procedural Background

Appellant was hired by Blue Cross in December 1985, as an executive secretary to Russell Gray, a vice-president in Blue Cross's human resources division. Gray and appellant were stationed in Oakland.

In 1986, Blue Cross underwent a reorganization. Preparations were begun to move Blue Cross's headquarters from Oakland to Woodland Hills in southern California. As a result of this reorganization, approximately 300 employees, primarily from the Oakland office, lost their jobs. One of the employees affected by this change was Gray.

On Friday, October 24, 1986, appellant learned that Gray would be leaving Blue Cross effective October 31. He was being replaced by Anne Monroe, who would work primarily out of Blue Cross's Woodland Hills office. Appellant was concerned about how Gray's departure would affect her so she went to speak with him. With Gray's help, appellant attempted to find an equivalent position within Blue Cross. None was available.

On Wednesday, October 29, Gray had lunch with Blue Cross general counsel, Angele Khachadour, to discuss the terms of his departure. During lunch, Gray raised the subject of appellant. He recommended that appellant be terminated on the same day as he, and that she receive a termination package which would include severance pay and accrued vacation. Khachadour replied that she had no difficulty with this arrangement. Gray then said that he would contact Don Horn, the compensation manager, to determine if the terms he proposed for appellant were consistent with what other terminated employees had received.

After lunch, Gray asked Horn to review the recommendation concerning appellant's termination. Horn told Gray that two weeks' severance pay was normal given appellant's short tenure with Blue Cross, and that the termination package he was proposing "was not out of line." Gray and Horn then spoke to appellant. They told her that the termination package which they were proposing would allow her to leave Blue Cross on October 31, and that she would receive a lump sum check covering her salary through November, four weeks of severance pay, accrued vacation and other benefits. Appellant agreed to this proposal. Gray then sent a memorandum to the payroll department, with a copy to Khachadour, outlining the agreement.

The following day, Khachadour phoned appellant and told her that the termination package Gray had presented to her did not have her consent or approval. Appellant was told that her position was not being eliminated, that she would be working for Anne Monroe, and that she should report for work the following Monday.

Monroe began work the following Monday. Her office was located in Woodland Hills. She phoned appellant early that week and told her that she would need some time to decide what to do about appellant's position in Oakland. Subsequently, Monroe decided that she needed a full-time secretary in Woodland Hills and that a second full-time secretary in Oakland could not be financially justified. Thus, on Thursday, November 6, Monroe phoned appellant and told her that she had decided to eliminate her position and that her termination notice would be sent the following day.

The termination notice advised appellant that her position was being eliminated effective December 5, 1986, and that if she did not obtain another position within Blue Cross by that date, she would be entitled to two weeks' severance pay and other benefits.

Appellant alleged that during her final 30 days with Blue Cross, she was "forced" to perform such "menial tasks" as being the receptionist, answer-

ing phones, and assisting secretaries of a previously lower rank. She claimed she was "treated as an object of curiosity," was the subject of office gossip, and was the object of jokes by other staff members. As a result, appellant suffered stress and anxiety, cried frequently, could not eat or sleep, lost weight, and worried about her financial condition.

Following receipt of the termination notice, appellant began to search for a new job outside of Blue Cross. During the thirty-day notice period, appellant was permitted to go on job interviews, on company time, two or three times a week.

On February 6, 1987, appellant filed the present complaint. It sets forth causes of action for fraud and deceit, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and a violation of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.).

After the trial court sustained respondents' demurrer to appellant's unfair practice act claim, respondents filed a motion for summary judgment, or in the alternative, summary adjudication of issues. Appellant opposed the motion and, after a hearing, the court granted respondents' motion for summary judgment holding that there was no triable issue with respect to appellant's three remaining causes of action. ▆▆▆▆ The order for entry of summary judgment was filed on January 28, 1988, and on February 8, appellant filed this appeal.[1]

### Discussion

On appeal, appellant challenges only one aspect of the court's order. She claims that the court erred in granting summary judgment as to her cause of action for intentional infliction of emotional distress. We disagree.

▆ Summary judgment is appropriate when the evidence in support of the moving party establishes that there is no triable issue of fact and that the moving party is entitled to a judgment as a matter of law. (*Isaacs* v. *Hunt-*

---

[1] Appellant purports to appeal from the court's January 28, 1988, order for entry of summary judgment. This is a nonappealable order. (See *Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770, 771-772 [145 P.2d 364].) Further, the court's judgment was not filed until February 22, 1988, 14 days after appellant's notice of appeal. Thus appellant's notice of appeal is also premature. However, under rule 2(c) of the California Rules of Court, a notice of appeal filed prior to entry of the judgment, but after its rendition, shall be valid and shall be deemed to been filed immediately after entry. Here, the court, in its order for entry of summary judgment stated that judgment should be entered "forthwith." Thus we will deem the notice of appeal as having been filed after the court's February 22 judgment. In our review of that judgment, we will review the court's order for entry of summary judgment. (See generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 41, pp. 64-65.)

*ington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) Where there is no material issue of fact to be tried and the sole question remaining is one of law, the trial court must determine the issue of law. (*Angelus Chevrolet* v. *State of California* (1981) 115 Cal.App.3d 995, 1000 [171 Cal.Rptr. 801].)

■ Because the determination of the trial court is one of law based upon the papers submitted, the appellate court must make its own independent determination of their construction and effect. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].) However, a motion for summary judgment is addressed to the sound discretion of the trial court and absent a clear showing of abuse, the judgment will not be disturbed on appeal. (*Hoffman* v. *Citadel General Assurance, Ltd.* (1987) 194 Cal.App.3d 1356, 1362 [240 Cal.Rptr. 253].)

■ In order to state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Conduct, to be "'outrageous'" must be so extreme as to exceed all bounds of that usually tolerated in a civilized society. (*Fowler* v. *Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44 [241 Cal.Rptr. 539].) While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact (*Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal.Rptr. 565]), the court may determine in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. (*Fowler* v. *Varian Associates, Inc., supra,* 196 Cal.App.3d at p. 44; see also Rest.2d Torts, § 46, com. h, at p. 77.)

■ We agree with the trial court that as a matter of law, the conduct of respondents in this case is not "outrageous," thus the court did not err in granting respondents' motion for summary judgment.

Respondents' conduct in this case consisted of (1) presenting appellant with a termination package which she accepted, (2) withdrawing that package the following day and telling appellant that she was still employed, (3) 7 days later telling appellant that her position would, in fact be eliminated effective in 30 days, (4) providing appellant with a termination package

which was less advantageous than that which she had previously been offered, and (5) "forcing" appellant to work during her last 30 days as a receptionist, answer phones and assist secretaries who had previously been of a lower rank. While respondents' conduct is not exemplary, it certainly does not qualify as the kind of "outrageous" conduct necessary in order to support an action for intentional infliction of emotional distress. (Cf. *Alcorn* v. *Anbro Engineering Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216].)

Appellant disputes this conclusion and directs our attention to several cases where courts have found conduct sufficient to support a cause of action for intentional infliction of emotional distress. Appellant places considerable reliance on *Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241 [208 Cal.Rptr. 524], disapproved on other grounds in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 700, fn. 12 [254 Cal.Rptr. 211, 765 P.2d 373].) That case is distinguishable.

In *Rulon-Miller,* the plaintiff was a salesperson working for IBM in San Francisco. Several years prior to the acts giving rise to her causes of action against IBM, she met and began dating a fellow employee. The employee later left IBM to join another company and was transferred out of San Francisco. A year later he returned and once again began dating the plaintiff.

IBM management officials were aware that the plaintiff was dating the former IBM employee but IBM had a policy of not interfering in its employee's private affairs. Despite this policy, the plaintiffs manager told her to stop dating the former employee since it constituted a " 'conflict of interest.' " He then gave the plaintiff some time to think about the matter. The next day, the manager spoke to the plaintiff again, told her that " 'he had made up her mind for her,' " and dismissed her. (*Rulon-Miller* v. *International Business Machines Corp., supra,* 162 Cal.App.3d at pp. 244-246.)

A jury awarded the plaintiff damages for intentional infliction of emotional distress and the appellate court affirmed the award. In holding that the evidence supported the jury's finding of extreme and outrageous conduct the court noted, "The combination of statements and conduct would under any reasoned view tend to humiliate and degrade [the plaintiff.] To be denied a right granted to all other employees for conduct unrelated to her work was to degrade her as a person." (*Rulon-Miller,* 162 Cal.App.3d *supra,* at p. 255.)

By contrast, in the present case, appellant's termination was part of a company-wide reduction in work force. Appellant was not singled out. Her

personal activities apparently played no part in her termination. Although appellant was undoubtedly distressed by the awkward way in which her termination was handled, and by the fact that the termination package she received was less than she had originally been offered, respondents' conduct in no way approaches that of the defendants in *Rulon-Miller*.

■ Further, although Blue Cross owed a special duty to appellant as the result of its position as her employer (see *Alcorn* v. *Anbro Engineering, Inc., supra*, 2 Cal.3d at p. 498, fn. 2), Blue Cross cannot be subject to liability for infliction of emotional distress when it has merely pursued its own economic interests and asserted its legal rights. (*Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 67 [248 Cal.Rptr. 217].)

■ Summary judgment may not be granted unless reasonable minds can draw only one conclusion from the evidence. (*Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 318 [229 Cal.Rptr. 627].) ■ This is such a case. Appellant's "damages" are no greater than those normally to be expected by a termination which is undisputedly the result of a legitimate corporate reorganization.

The trial court did not abuse its discretion in granting summary judgment as to appellant's claim for intentional infliction of emotional distress.

The judgment is affirmed.

Poché, J., and Channell, J., concurred.