Filed 7/18/16  Loughlin v. County of Los Angeles CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LAWRENCE LOUGHLIN, | B263846 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC539390) |
| v. | |
| COUNTY OF LOS ANGELES, et. al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Affirmed.

Law Offices of Carlin & Buchsbaum, Brent S. Buchsbaum and Ana L. De La Torre, for Plaintiff and Appellant.

Law Offices of David J. Weiss, David J. Weiss and Michael H. Forman, for Defendants and Respondents.

Plaintiff and appellant Lawrence Loughlin (plaintiff), at age 72, went to work for the County of Los Angeles Department of Children and Family Services (Department). He resigned five years later and sued the County of Los Angeles (County) for age discrimination, disability discrimination, retaliation, failure to accommodate disabilities, and failure to engage in the interactive process under the California Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.). He also brought a claim for intentional infliction of emotional distress against the County and his former supervisor, Liliana Camberos (Camberos). Defendants moved for summary judgment, which the trial court granted. We consider whether plaintiff established a material dispute of fact on the theory of liability as alleged in his complaint, which asserted that Camberos (not his other previous supervisors) subjected him to unlawful adverse employment actions.

## I. BACKGROUND

### A. Facts

Plaintiff began working for the Department in June 2008. Department social workers supervise and place children who need protection on account of abuse, neglect, or exploitation. The essential functions of the job "include producing periodic timely and legally sufficient written reports to the court, assessing children's safety and welfare through monthly home visits, assessing parents' compliance with the child's case plan, maintaining detailed files regarding each child, and responding to a variety of casework emergencies, among other things."

#### 1. Plaintiff's medical history and requests for accommodation

In October 2010, a water main broke and flooded plaintiff's house, requiring plaintiff and his wife to relocate to a hotel. Plaintiff experienced stress as a result of the damage and temporary relocation, and he took a leave of absence from his job at the

---

[1] All further undesignated statutory references are to the Government Code.

2

Department.  He saw a psychiatrist for depression and anxiety, Dr. Talag, who authorized plaintiff's absence from work from December 2, 2010, through June 15, 2011.  Plaintiff's return to work was authorized by Dr. Talag "without any restriction."

Within a week of returning to his job in June 2011, plaintiff informed his supervisor, Guadalupe Lopez (Lopez), that he intended to retire at the end of July.  Plaintiff changed his mind, however, and did not retire.  In July, plaintiff informed Dr. Talag that the Department was planning to assign him 38 cases in August, which he thought would be too stressful.[2]  Plaintiff took a medical leave of absence from July 11, 2011, through August 21, 2011.

According to plaintiff, when he returned to work in August, Lopez told him:  "You shouldn't have returned to work.  You should have retired instead.  You['re] old enough to retire."  (Plaintiff would later acknowledge in a deposition that it was "very possible" that Lopez's comment related to his previously announced intention to retire, although he also believed the comments were discriminatory.)  In late August, Dr. Talag recommended in a written "Work Status Report" that plaintiff receive a reduced workload until September 26, 2011, when she would reevaluate him.

Plaintiff submitted his doctor's report to Lopez, who forwarded it to the Department's Office of Health and Safety Management.  On September 1, a Department personnel employee wrote plaintiff and Lopez to set up a meeting to discuss accommodations.  The personnel employee asked Lopez to "make every effort to temporarily accommodate" plaintiff prior to the meeting.  Plaintiff was handling 29 cases at the time.

When the interactive process meeting was held on September 14, plaintiff asked for a reduction in caseload, a new keyboard, speech recognition software, and a magnifier for his computer monitor screen.  The following day, the Department reduced plaintiff's caseload to 17.  The Department replaced plaintiff's keyboard and, in order to satisfy his

---

[2]     Department social workers were required to maintain a caseload of at least 31 and no more than 38 cases, with most social workers handling 35-38 cases.

3

other requests, asked him to provide a doctor's note within two weeks for an ergonomic evaluation and voice recognition software.

In mid-January 2012, plaintiff provided a note from his family physician, Dr. Scott, requesting that his caseload be set at no more than 17 cases for a full year and recommending he receive an ergonomic evaluation and voice recognition software. The Department continued to maintain plaintiff's caseload at no more than 17 cases.[3]

### 2. *Plaintiff's work performance*

Lopez became plaintiff's supervisor in September 2010, just one month before he started his leave of absence following the flood at his home. After plaintiff was out of the office on leave, Lopez reviewed his cases in order to reassign them to other social workers during his absence. When she did so, she "was alarmed to discover [the] cases had been inappropriately handled to a potentially dangerous degree." Lopez created memoranda documenting areas of concern, which included general disorganization, lack of updating, departures from standard case formatting, and missing medical records and photos.

Lopez was required to complete plaintiff's next work performance evaluation in April 2011, while plaintiff was still on leave. Consequently, Lopez spoke with plaintiff's previous supervisor, Cheryl Gilcrest, about his work performance in 2010.[4] According to Lopez, Gilcrest said she would rate plaintiff as "improvement needed" if she were the one evaluating him (1) because he consistently failed to file or organize his case materials according to Department policy despite being offered additional assistance and (2) because he needed close supervision to perform his job functions. Based on her discussion with Gilcrest and her independent review of plaintiff's work, Lopez rated plaintiff as "improvement needed" in the following evaluative categories: social work

---

[3]      Plaintiff's voice recognition software was installed, and an ergonomic assessment scheduled, later in April.

[4]      Plaintiff testified in his deposition that Gilcrest did not discriminate against him.

skills, work knowledge, work habits, recording (recording information, following guidelines, and meeting deadlines), and use of supervision. She rated plaintiff "competent" in terms of his "work ethics," work relationships, and adaptability. Lopez gave plaintiff an overall rating of "competent,"[5] but she recommended the Department place him on a "Needs Improvement" plan once he returned to work to address issues involving his organization and completion of case files and documents.

In January 2012, after plaintiff had returned to work, Lopez requested a meeting with a Department personnel employee because she was "having many performance issues [with plaintiff] despite him having a reduced caseload" and "need[ed] to be able to document him." Then, in March 2012, Lopez was again responsible for evaluating plaintiff's work performance. She rated plaintiff as "improvement needed" on his social work skills, work knowledge, work habits, use of supervision, and adaptability. She rated plaintiff "competent" in recording, work ethics, and work relationships. Overall, Lopez rated plaintiff "competent." She reported that plaintiff required significant supervision and guidance, needed to improve his family interviewing and assessment skills, had "difficulty staying on task and understanding and completing" his job requirements, was frequently disorganized and behind on his work, failed to comply with Department time-reporting policies and work instructions, and struggled to adapt to new and changing situations.

The March 2012 evaluation and its supporting documentation provided specific examples of plaintiff's shortcomings and explained how they affected his child clients and his coworkers. While Lopez acknowledged that plaintiff had a pleasant demeanor and was quick to seek assistance, she found that plaintiff had "difficulty following

---

[5] The available overall rating categories were "outstanding," "very good," "competent," "improvement needed," or "unsatisfactory." Department policy required written factual evidence, including proof the employee was previously informed of deficiencies and given guidance and assistance to correct them, to support an overall rating of "improvement needed." An overall rating of "unsatisfactory" subjected the employee to demotion or discharge.

through with the work needed on his cases" notwithstanding his reduced caseload. Plaintiff refused to sign the March 2012 evaluation but testified at his deposition that he did not consider either that evaluation or the earlier evaluation in April 2011, also completed by Lopez, to be discriminatory or retaliatory.

Camberos became plaintiff's assigned supervisor in mid-February 2012. In the spring and summer of that year, Department personnel issued plaintiff several written disciplinary memoranda that documented various deficiencies in plaintiff's work and confirmed discussions between him and his supervisors regarding those shortcomings. In May, for instance, Camberos issued plaintiff a written "warning" after he allegedly detained a child without consulting a supervisor first, placed the child in an unapproved foster home, and made other errors related to the case.[6]

In December 2012, Camberos completed plaintiff's next annual evaluation. She rated him as "improvement needed" in his social work skills, work knowledge, work habits, recording, use of supervision, work ethics, and adaptability. She rated his work relationships as "competent." Overall, Camberos gave plaintiff an "improvement needed" rating. Her evaluation noted, among other things, that in September and October, two of plaintiff's cases had been reassigned because of client complaints and because plaintiff had violated confidentiality rules. Having concluded that plaintiff's work performance had dropped over the past several months, Camberos placed him on a three-month "Corrective Action Plan" that required him to attend mandatory training on social work skills, to keep his case files and work area organized, to prepare timely

---

[6]  Because Camberos was temporarily reassigned to a different position, Stacie Ottley served as plaintiff's acting supervisor from May or June to mid-September 2012. In a declaration submitted after plaintiff filed this lawsuit, Ottley opined that plaintiff "failed to perform the essential functions of his job adequately and in accordance with [Department] standards" while under her supervision. Ottley said she would have "disciplined him more frequently and more harshly for his mistakes, errors, poor judgment, and poor work performance" if she had been his permanent supervisor. She further stated that she would have rated him as unsatisfactory or needing improvement if she had been called upon to evaluate him. Plaintiff testified in his deposition that Ottley did not discriminate against him.

reports justified by policy, and to treat his clients and colleagues with professionalism and respect. If plaintiff failed to achieve an overall rating of "competent" after three months, he would be rated "unsatisfactory" and demoted or terminated. Plaintiff refused to sign the December 2012 evaluation.

In early 2013, Department clients again complained about plaintiff. On March 5, 2013, Camberos asked plaintiff to submit affidavits describing his version of the events related to the complaints, but there is no evidence in the record plaintiff did so. That same day, however, plaintiff did send an e-mail to Department Regional Administrator Stephen Long (Long) requesting a meeting. In the e-mail, plaintiff described the client incidents and offered his side of the story. Plaintiff also claimed that an e-mail sent from his account to Camberos over the weekend had not actually been sent by him, and he wrote: "I can only deduce I am the subject of some kind of attack and that the [Department] computer system has been compromised. Both of which is unacceptable. [¶] I am sending this e-mail to my chain of command requesting an appropriate investigation begin to find out why and how this has happened. I sense this has occurred because there could be discrimination against me based on my age, sex, race or a combination of all three." At the close of the e-mail, plaintiff described two incidents where he felt Camberos had taken cases from him without justification, but plaintiff did not claim Camberos had done so based on discriminatory motives.

In mid-March 2013, Long evaluated plaintiff, rating him "unsatisfactory" in every category and overall.[7] According to Long, despite meeting with Camberos twice monthly to improve plaintiff's job skills, plaintiff still had difficulty organizing and timely completing his case assignments. Long's evaluation also noted that plaintiff failed to make required client visits or to properly conduct or document interviews and other client contacts, showed a lack of understanding of his job duties, was often difficult to locate and did not respond to calls or e-mails, and submitted court reports that were frequently

---

[7]     Plaintiff's pleadings and other documents state that Camberos completed this evaluation, but the document in the record identifies Long as the evaluator.

7

incomplete, riddled with errors, or suffered from other problems. In addition, Long's evaluation reported that clients and service providers complained about plaintiff, and plaintiff's only response had been to assert that the complainants were lying.

Long and a Department human resources manager thereafter recommended that the Department director discharge plaintiff for poor performance. On March 26, plaintiff informed the Department he intended to retire effective March 30, 2013, "[d]ue to health considerations." Around the time of plaintiff's final evaluation and notice of resignation, the Department reassigned his cases to other social workers. Plaintiff testified at his deposition that he had received a letter indicating the Department intended to discharge him and that he retired in part because he was going to be discharged and also because he felt discriminated against on account of his age and his reduced workload.

B.      *Plaintiff's Lawsuit*

After resigning, plaintiff sued the County for (1) age discrimination, (2) disability discrimination, (3) retaliation, (4) failure to accommodate his disabilities, and (5) failure to engage in the interactive process, all in violation of FEHA. He also brought a sixth cause of action against Camberos and the County for intentional infliction of emotional distress.

According to the complaint, plaintiff sought accommodations for disabilities "including but not limited to blood pressure, heart condition, stress and anxiety," but defendants initially refused and then, after eventually providing accommodations, retaliated against him because of it. Plaintiff also alleged Camberos treated him less favorably than younger employees, "including micro managing and over scrutinizing his work" on account of his age and disabilities. Plaintiff further alleged that Camberos's negative evaluations of him were due to his age and disability status. And plaintiff contended the Department had constructively terminated him because he resigned when the Department took his cases away and he no longer had any work to do. Importantly for purposes of this appeal, plaintiff included no allegations in his complaint concerning

8

alleged discrimination by his former supervisor Lopez, nor did he allege the adverse actions taken by Camberos were instigated by or taken at the behest of Lopez.

      C.      *Defendants' Motion for Summary Judgment*

Defendants moved for summary judgment, contending that plaintiff's claims of age and disability discrimination failed because the adverse actions he alleged were attributable not to discrimination but to his consistently poor job performance, both before and after defendants provided him with various workplace accommodations. Defendants also argued plaintiff could not establish a retaliation claim because plaintiff never engaged in protected conduct and his poor work performance justified any adverse employment decisions. With respect to plaintiff's claims that the Department did not adequately accommodate his disabilities or engage in the interactive process, defendants' summary judgment motion emphasized the Department granted all accommodations he sought and maintained there was no evidence the Department had failed to engage in the interactive process in good faith. Finally, defendants argued plaintiff could not prevail on his cause of action for intentional infliction of emotional distress because defendants' conduct was not extreme or outrageous and plaintiff's claim was preempted by California's worker's compensation law.

In opposition, plaintiff contended material, disputed facts precluded summary judgment, citing not just conduct by Camberos, but also relying on statements and actions both by Long and by Lopez, although she was never mentioned in his complaint. Plaintiff said when he returned to work in August 2011 after opting not to retire, Lopez gave him "the cold shoulder" and made the "You['re] old enough to retie" comment described above. Plaintiff claimed Lopez had treated another older coworker, Harold Daley, similarly by suggesting the job was for young people and that Daley should retire. Plaintiff also asserted that Lopez and Camberos "were very good friends," and he claimed that once Camberos became his supervisor, she constantly criticized him, evaluated his performance unfairly, denied him access to online programs offered to younger employees that provided case-related information, and refused to make him the

9

lead of their unit, which he claimed he was entitled to under Department policy. Plaintiff separately accused Long of screaming in his face and pointing a finger at his nose on one occasion.

Plaintiff supported his opposition to summary judgment with, among other things, portions of his deposition, his own declaration, and a declaration from his former colleague Daley. According to Daley's declaration, he worked as a children's social worker for the Department from 2008 to 2014. He was 70 years old when the Department terminated him. The Department said it was for poor work performance, but Daley attributed it to age discrimination. Daley claimed Lopez micro-managed him, constantly criticized his work without suggesting training that would assist him, and asked him more than once when he planned to retire, saying, "This job is for young people. You should just enjoy your life." In addition to his personal account of discrimination, Daley said he saw plaintiff being called into Ronda Jacobs's office, who was Camberos's superior, on a daily basis in 2012.

At the hearing on defendants' motion for summary judgment, plaintiff argued that even though he had not sued Lopez or identified her as a source of discrimination in the complaint, the court should consider Lopez's actions in deciding summary judgment. Plaintiff cited the so-called "cat's paw" doctrine (not argued in his opposition papers), which some courts had applied in certain circumstances to impute discriminatory animus harbored by one actor to another actor responsible for taking an adverse action against an employee. Under this doctrine, plaintiff argued Lopez harbored discriminatory animus against him, and this discriminatory motive could be deemed to have influenced adverse actions taken by Camberos. If the court applied the "cat's paw" doctrine (which we will refer to as the "imputed motivation" doctrine), plaintiff contended Lopez's statements that plaintiff was old enough to retire and Daley's statements allegedly corroborating plaintiff's account and documenting his own experiences of discrimination by Lopez established a material dispute of fact on his age discrimination claim. Plaintiff also argued there were disputed issues of material fact as to his retaliation claim, namely, the fact that plaintiff was written up for poor performance soon after e-mailing Long about

10

discrimination against him, as well as his interactive process claim, namely, evidence that an unnamed employee of the "Safety and Health" department purportedly told him he should have received more interactive process meetings.

The court granted summary judgment, finding no triable issues of fact based on admissible evidence. Because plaintiff's complaint did not include allegations of discrimination or harassment by Lopez and did not mention any conduct directed at Daley, the court declined to consider plaintiff's arguments relating to those two individuals. Nor did the court grant plaintiff leave to amend his complaint to conform to proof because plaintiff did not diligently seek to amend despite being aware of the allegations regarding Lopez and Daley for some time.

The trial court ruled plaintiff could not raise a triable issue on his age discrimination claim because the only evidence he offered of age-related motivation was Camberos's refusal to give him access to online programs or make him the lead social worker of their unit. Although the court had said it would not consider the arguments concerning conduct by Lopez and Daley, the court also found, apparently in the alternative, that plaintiff failed to link Lopez to any adverse employment actions, e.g., the negative evaluations by Camberos or the divestiture of his caseload, and he failed to establish Camberos's conduct was related to his age.

The court also granted summary judgment on plaintiff's other causes of action. As to his disability discrimination claim, the court found plaintiff offered no evidence that defendants' conduct was prompted by discriminatory animus related to plaintiff's disabilities. The court found summary judgment appropriate on plaintiff's retaliation claim because plaintiff's e-mail to Long, in which he purportedly complained about discrimination, was too vague to constitute protected activity and because it was not connected to plaintiff's later performance review. Next, on plaintiff's claim for failure to accommodate his disabilities, the court found there were no triable issues because the evidence was undisputed that the Department provided "each and every one of plaintiff's requests" for accommodations. Regarding plaintiff's interactive process cause of action, the court ruled defendants were entitled to judgment because the sole evidence cited by

11

plaintiff to support it, the purported statement by a Health and Safety Department employee that he should have been granted more interactive process meetings, was inadmissible hearsay. Finally, the court ruled that plaintiff presented no triable issues regarding his intentional infliction of emotional distress claim because the evidence showed defendants' conduct was based on legitimate personnel decisions unmotivated by discrimination or retaliation.

## II. DISCUSSION

Plaintiff argues the trial court should have denied defendant's motion for summary judgment because there were disputed issues of material fact, but our de novo review leaves us convinced summary judgment was proper. The trial court properly disregarded plaintiff's theory of age discrimination based on evidence of Lopez's conduct and the imputed motivation doctrine because that theory was not fairly presented by the allegations in plaintiff's complaint. As the issues had been framed by his complaint, and assuming for argument's sake plaintiff made out a prima facie case of age or disability discrimination, plaintiff presented no evidence to establish a dispute of fact concerning whether the Department's non-discriminatory reason for the challenged adverse employment actions—namely, his poor job performance—was pretextual. The remainder of plaintiff's claims under FEHA fare no better for reasons we shall describe, and defendants also negated his cause of action for intentional infliction of emotional distress. Summary judgment was proper.

### A. *Standard of Review*

To obtain summary judgment, a moving defendant must demonstrate that one or more elements of the plaintiff's cause of action cannot be established or that a complete defense to the plaintiff's cause of action exists. (Code Civ. Proc., § 437c, subd. (p)(2); see also *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 370 (*Nealy*).) We review a grant of summary judgment de novo, following the same three-step process as the trial court: "'we (1) identify the issues framed by the pleadings; (2) determine

whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue. [Citation.] Like the trial court, we view the evidence in the light most favorable to the opposing party and accept all inferences reasonably drawn therefrom. [Citation.]' [Citation.]" (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 549 (*DeJung*).)

A defendant is entitled to summary judgment where it shows plaintiff's case has no merit. (Code Civ. Proc., § 437c, subds. (a), (o) & (p)(2).) To do so, the defendant may present affirmative evidence that conclusively negates an essential element of the plaintiff's case. (*Nealy*, *supra*, 234 Cal.App.4th at p. 370; see also *Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 335, fn. 7 (*Guz*).) In a FEHA discrimination or retaliation case, the employer satisfies this burden by presenting evidence of "nondiscriminatory reasons" for its adverse employment action "that would permit a trier of fact to find, more likely than not, that they were the basis for the [adverse employment action]. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.]" (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098.)

### B.    *Consideration of Unpleaded Issues*

Summary judgment proceedings, including our review, are restricted to the issues raised in the pleadings. (*Hutton v. Fidelity Nat. Title Co.* (2013) 213 Cal.App.4th 486, 493 (*Hutton*).) Thus, the movant for summary judgment "need not refute liability on some theoretical possibility not included in the pleadings," and the opponent may not raise issues beyond the pleadings in its separate statement, declarations, or other oppositional evidence. (*Ibid.*) If the opponent desires to incorporate such issues into its case in chief, the proper vehicle for doing so is an amendment to its complaint. (*Ibid.*) Here, defendants contend the trial court properly disregarded the evidence concerning Lopez, including Daley's declaration, on the ground that it was not alleged in plaintiff's complaint; defendants urge we should likewise disregard the evidence.

13

Plaintiff first proposed his theory that Camberos's adverse actions against him were effectively motivated by Lopez's discriminatory animus at the hearing on summary judgment. Facts to support this proffered theory of liability on his age discrimination claim were absent from his complaint.[8] Instead, plaintiff's complaint attributes the Department's adverse employment actions against him—two negative performance reviews, the divestiture of his caseload, and constructive termination—solely to Camberos's discriminatory and retaliatory motives. Indeed, other than Camberos, the only other Department employees even mentioned in the complaint are Long, to whom plaintiff allegedly complained of Camberos's discrimination, and Ottley, plaintiff's acting supervisor during part of 2012, who plaintiff says treated him fairly. Despite failing to allege Lopez was the underlying source of the Department's age discrimination against him, plaintiff relied upon and sought to introduce evidence in support of that theory in his opposition to summary judgment. Because such evidence constitutes a new, unpleaded theory of liability that goes beyond merely clarifying or elaborating upon the theory presented in the complaint, we, like the trial court, need not consider it.[9] (See, e.g., *Hutton*, *supra*, 213 Cal.App.4th at p. 496; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253-1258 (*Laabs*).)

Our conclusion relates not only to Lopez's statements concerning whether plaintiff should retire, but also to the evidence regarding Daley. Daley was never supervised by Camberos and complains only of discriminatory conduct by Lopez. Thus, the Daley

[8] Although plaintiff also claimed Lopez discriminated against him because of his disability, and was motivated by a desire to retaliate against him, the conduct he attributes to Lopez at most supports his age discrimination claim.

[9] Plaintiff also failed to cite the evidence regarding Lopez and Daley in his separate statement of material facts in opposition to summary judgment, which may "constitute a sufficient ground, in the court's discretion, for granting the [summary judgment] motion." (Code Civ. Proc., § 437c, subd. (b)(3); see also *O'Byrne v. Santa Monica-UCLA Medical Center* (2001) 94 Cal.App.4th 797, 800, fn. 1 [evidence considered by court on summary judgment must appear in parties' separate statements].)

14

evidence serves to buttress not the allegations of discrimination by Camberos pleaded by plaintiff but rather a theory that Lopez was the true fount of discriminatory conduct.

If plaintiff wanted to rely on the allegations relating to Lopez and Daley in an effort to establish a dispute of fact warranting trial, he should and could have moved to amend his complaint. (*Laabs*, *supra*, 163 Cal.App.4th at p. 1258, fn. 7 ["To allow an issue that has not been pled to be raised in opposition to a motion for summary judgment in the absence of an amended pleading, allows nothing more than a moving target. For Code of Civil Procedure section 437c to have procedural viability, the parties must be acting on a known or set stage"].) Plaintiff knew of the allegations regarding Lopez and Daley before defendants moved for summary judgment, and he could easily have sought leave to amend his complaint during that time. It is therefore immaterial whether defendants became aware of potential issues involving Lopez and Daley during discovery, or whether defendants intended to rely on their own evidence regarding Lopez. Plaintiff should have timely moved to amend the complaint, he has no excuse for failing to do so, and defendants' summary judgment motion needn't have (indeed, couldn't have) negated his imputed motivation theory of liability. (See, e.g., *Laabs*, *supra*, 163 Cal.App.4th at p. 1258 ["It is the allegations in the complaint to which the summary judgment motion must respond"].)

C.      *Analysis*

1.      *Plaintiff's age and disability discrimination claims*

FEHA prohibits employers from discriminating against an employee "in compensation or in terms, conditions, or privileges of employment" on the basis of such employee's age, physical disability, mental disability, or medical condition. (§ 12940, subd. (a).) Adverse employment actions are not limited to demotions and terminations; they may be found within "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1054 (*Yanowitz*).)

15

Resolution of the discrimination claims at issue, which plaintiff supports with solely circumstantial evidence, proceeds under the *McDonnell Douglas* test.  (*DeJung*, *supra*, 169 Cal.App.4th at pp. 549-550; see also *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.)  First, "a prima facie case[] of age discrimination arises when the employee shows (1) at the time of the adverse action he or she was 40 years of age or older, (2) an adverse employment action was taken against the employee, (3) at the time of the adverse action the employee was satisfactorily performing his or her job and (4) the employee was replaced in his position by a significantly younger person."  (*Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1002.).  A prima facie case of disability discrimination is established by evidence that an employee (1) suffered from a disability, (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability.  (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310 (*Sandell*).)  If a prima facie case is established, the burden shifts to defendant to produce evidence demonstrating the adverse action taken against the plaintiff was unrelated to his age or disability (i.e., a non-discriminatory reason).  When an employer does so, the burden shifts back to the plaintiff, who must demonstrate a triable issue by identifying evidence that reasonably suggests the adverse action is instead attributable to intentional discrimination.  (*Guz, supra*, 24 Cal.4th at p. 357; see also *DeJung*, *supra*, 169 Cal.App.4th at p. 553 [once employer satisfies its burden, "the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination"].)

Defendants' motion for summary judgment sought to conclusively negate a necessary element to establish a prima facie case, namely, that plaintiff was satisfactorily performing his job (with or without accommodations) at the time of the adverse employment actions he challenged.  The motion and separate statement adduced substantial evidence that plaintiff's poor work performance, a non-discriminatory reason,

16

justified the adverse employment actions taken against him. Plaintiff's performance problems were supported by documentation of specific instances where plaintiff failed to perform adequately, and these shortcomings were consistent over time. For example, plaintiff was frequently counseled or critiqued for failing to maintain complete, organized case files; missing deadlines; needing substantial, direct supervision; adhering to overtime policy; communicating with and documenting his time spent with clients and their families; preparing court reports; complying with Department instructions; and being accessible to his colleagues, clients, and service providers. These facts demonstrated plaintiff's inability to perform essential job functions such as "producing timely and legally sufficient written reports to the court," "assessing children's safety and welfare through monthly home visits," and "maintaining detailed files regarding each child."

The only contrary evidence plaintiff offered on the question of the adequacy of his job performance at the time of the challenged adverse actions was his own declaration and deposition testimony. While the requirements to establish a prima facie case are not onerous, we doubt whether plaintiff's often conclusory assertions that his performance was satisfactory were sufficient under the circumstances to establish all the necessary elements of a prima facie case of discrimination.[10]

Nevertheless, assuming for argument's sake that plaintiff did make a sufficient showing to establish a prima facie case of discrimination (or that such a showing was unnecessary (*Guz*, *supra*, 24 Cal.4th at pp. 356-357)), plaintiff's poor work performance was undoubtedly a legitimate, non-discriminatory reason for the employment actions he challenged. And plaintiff failed to rebut defendants' non-discriminatory reason with evidence "supporting a rational inference that intentional discrimination, on grounds

---

[10]     Paragraph three of plaintiff's declaration, for instance, states in full as follows: "I enjoyed my job at [the Department], was dedicated to it and did not hesitate to work long hours during the week and on the weekends in order to get my job done. I performed my job duties in a satisfactory manner, did not require significant individual supervision[,] and I do not believe I ever placed in danger the general well being of the children I was assigned to. I cared deeply for the children I was assigned to."

17

prohibited by the statute, was the true cause of the employer's actions. [Citation.]" (*Id.* at p. 361, italics omitted.)

While plaintiff generally denied that his skills were lacking in the respects cited by the Department, he provided no evidence that raised a genuine issue as to whether the evidence of poor performance was just a cover for discrimination. The evaluations that plaintiff claims were discriminatory did not show a sudden shift in plaintiff's performance reviews, leading to an inference of discriminatory animus. Rather, each of plaintiff's supervisors noted his deficient work, even supervisors like Ottley that plaintiff conceded had not discriminated against him. (See *ante*, p. 6, fn. 6.) Notably, plaintiff himself conceded during his deposition that he may have been falling short or have been overwhelmed: "I was doing the job at 17 cases. Whether it was too much or not, it's hard to say. I think it might have been, but you know, I felt—I felt bad about getting a reduction at 17 cases." Plaintiff accordingly failed to establish a genuine dispute of fact on the question of whether his negative performance reviews, and other criticism of his work, were unwarranted.

Nor did plaintiff provide other evidence of discriminatory intent to contradict defendants' position. Plaintiff asserts that Camberos treated him differently than younger employees by denying him access to unidentified online programs, "criticizing [him] over everything," and not making him lead of their unit in contravention of Department policy. These unsupported, uncorroborated assertions are unavailing because they are unconnected to the issue of plaintiff's work performance so as to create a dispute of fact concerning pretext or intentional discrimination. Without evidence plaintiff was performing adequately—or that younger employees were treated better despite performing similarly to plaintiff—a trier of fact could not reasonably infer the Department treated plaintiff differently for discriminatory reasons. (See *Guz, supra*, 24 Cal.4th at p. 362 [summary judgment for employer appropriate where, "given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred"].)

18

Indeed, even if we were to consider the imputed motivation theory of liability plaintiff belatedly advanced at the summary judgment hearing, we would find plaintiff's discrimination causes of action did not warrant a trial. Lopez was not a "significant participant" in the adverse employment actions against plaintiff (see *DeJung*, *supra*, 169 Cal.App.4th at p. 551), and plaintiff's unsupported and conclusory assertion in his own declaration that Lopez and Camberos were "very good friends" does not justify an inference that Camberos was acting as an "instrumentality or conduit" of Lopez's discriminatory animus (cf. *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 116). Daley's declaration also is not evidence that would support a conclusion a factual dispute exists as to pretext, in part because there is no evidence that Daley's work performance was adequate so as to suggest a pretextual motivation for his termination.

### 2.    *Plaintiff's retaliation claim*

Employers subject to FEHA may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by the statute] or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (h).) For a claim of retaliation under FEHA to survive summary judgment, there must be evidence on which a factfinder could conclude "(1) [the employee] engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1042.) If the employer demonstrates a legitimate reason for its adverse employment action, the burden shifts back to the employee to prove intentional retaliation. (*Ibid.*)

Activity protected under FEHA includes seeking advice from government agencies regarding employment discrimination, "participating in an activity perceived by the employer as opposition to discrimination," and participating in a legal proceeding relating to the employer's alleged violation of FEHA. (*Nealy*, *supra*, 234 Cal.App.4th at pp. 380-381.) An employee's opposition to conduct he or she reasonably believes to be unlawfully discriminatory under FEHA is considered a protected activity, even if a court

19

later determines that the conduct was not discriminatory. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1043.)

Plaintiff claims that various acts of Camberos and Long, including Camberos's critical evaluations, their joint action to divest plaintiff of his caseload, and Long's failure to respond to plaintiff's grievances, were retaliatory actions taken because plaintiff sought accommodations for his disabilities in August 2011 and sent the March 2013 e-mail to Long in which he made reference to discrimination. We conclude the County is entitled to summary judgment on plaintiff's retaliation claim because his email to Long did not constitute protected conduct and because plaintiff cannot show a causal connection between his request(s) for accommodations and the adverse employment actions he challenges.

Plaintiff's e-mail to Long is not protected activity. While informal complaints of discrimination may amount to protected activity (see *Yanowitz*, *supra*, 36 Cal.4th at p. 1047 & fn. 7; *Cal. Fair Employment and Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018), "vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1047.) Here, plaintiff's reference to discrimination in the Long e-mail was too indefinite to merit protection. Plaintiff did not accuse Camberos or any particular person of discrimination, the type of discrimination stated was presented only in speculative terms, and his description of what he said "could be" discriminatory conduct, a purported computer "attack," was befuddling to say the least. And even if the email were protected activity, it could not support an inference of retaliation because of the lack of a triable issue on causation: Long completed plaintiff's final evaluation approximately 10 days after the email, but the timing of that evaluation was dictated by the terms of his three-month improvement plan.

As for plaintiff's request for accommodations in August 2011 (and arguably a follow up request in January 2012 with a note from Dr. Scott), a recent clarifying amendment to FEHA indicates a request for an accommodation can be protected conduct. (§ 12940, subdivision (m)(2) [added to the code by Stats. 2015, ch. 122, § 1(a)].) The

evidence submitted in connection with summary judgment, however, demonstrates plaintiff cannot establish a causal retaliatory link between the request for accommodations and the alleged adverse employment actions. For the same reasons we have given in discussing plaintiff's discrimination claims, Camberos's evaluations of plaintiff and the decision to remove him from his cases were justified by plaintiff's poor work performance, and plaintiff came forward with no evidence to establish a genuine dispute over whether this was a mere pretext for a retaliatory motive. This is especially true because the challenged evaluations by Camberos and Long occurred so long after the accommodations sought. (Cf., e.g, *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1112 [explaining a *short* temporal proximity between a plaintiff's protected activity and adverse employment action (not present here) can support a prima facie case of retaliation, but once the defendant comes forward with a legitimate reason for the adverse employment decision, a plaintiff must come forward with evidence sufficient to permit a factfinder to infer intentional retaliation].) The same is, of course, true for the Long evaluation that occurred even later.

### 3. *Plaintiff's claims for failure to accommodate his disabilities and failure to engage in the interactive process*

FEHA requires employers to "make reasonable accommodation" for an employee's "known physical or mental disability" (§ 12940, subd. (m)(1)) after "engag[ing] in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response" to the employee's request (§ 12940, subd. (n)). An employer is liable for failure to accommodate where (1) the employee has a known physical or mental disability under FEHA, (2) the employee was able to perform the essential functions of the job with reasonable accommodation, and (3) the employer did not reasonably accommodate the employee's disability. (*Nealy*, *supra*, 234 Cal.App.4th at p. 373.)

As briefed, plaintiff's argument that summary judgment was improperly granted on his failure to accommodate and failure to engage in the interactive process claims is

21

merely perfunctory. Exclusive of citations to general statements of the law, the argument in his opening brief consists of just three sentences, one of them being, "For the reasons discussed above, Respondent failed to accommodate Appellant." Accordingly, we conclude plaintiff has waived both issues. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

Even if not waived, we would conclude summary judgment was proper on both causes of action. The evidence submitted in connection with summary judgment conclusively establishes plaintiff timely received all the accommodations he requested, which establishes no trial was warranted on the failure to accommodate claim. As for failure to engage in the interactive process, the only evidence plaintiff proffered in support of that claim was a statement the trial court excluded as hearsay: "Prior to my forced resignation, I received a call from a lady from the Safety and Health department. This lady apologized to me and said my case had 'fallen through the cracks' and said I should have received more Interactive Process Meetings." Plaintiff did not object to the evidentiary ruling in the trial court, nor does he challenge it on appeal. We therefore hold the statement was properly excluded, which forecloses any dispute of fact on the interactive process claim.

### 4. *Plaintiff's intentional infliction of emotional distress claim*

A claim for intentional infliction of emotional distress obligates the plaintiff to show "'''''(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'''''" [Citations.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 (*Hughes*).) Conduct is "'outrageous'" where "it is so ""extreme as to exceed all bounds of that usually tolerated in a civilized community.''''" [Citation.]" (*Id*. at pp. 1050-1051.)

22

The trial court did not err in granting summary judgment to defendants on plaintiff's claim for intentional infliction of emotional distress because plaintiff's evidence does not demonstrate extreme and outrageous conduct.[11]  As we have explained, plaintiff failed to establish that defendants discriminated or retaliated against him, and the alleged criticism by Camberos and an incident where Long was alleged to have yelled in plaintiff's face were not "'"'of such substantial quality or enduring quality that no respectable [person] in civilized society should be expected to endure [them].'"'" [Citation.]" (*Hughes*, *supra*, 46 Cal.4th at p. 1051.)  Rather, the supervisor interaction with and evaluation of plaintiff were common personnel activities insufficient as a matter of law to constitute intentional infliction of emotional distress.  (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80; *Trerice v. Blue Cross of California* (1989) 209 Cal.App.3d 878, 883-884.)

---

[11]     Nor has plaintiff alleged a harassment cause of action under FEHA.

23

DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



TURNER, P.J.



KRIEGLER, J.